UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

THOMAS CHUNG,

        *Plaintiff*,

        *v*.

HIGHGATE HOTELS L.P., VORNADO REALTY TRUST,
*and* VICNENT CURCIO, *individually*,

        *Defendants*.

---------------------------------------------------------------------------x

16 CV 3069

**COMPLAINT**

Plaintiff Thomas Chung, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendants Highgate Hotels L.P., Vornado Realty Trust, and Vincent Curcio as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Thomas Chung ("Plaintiff" or "Mr. Chung") seeks damages and costs against Defendants Highgate Hotels L.P. ("Defendant Highgate" or "Highgate") Vornado Realty Trust ("Defendant Vornado" or "Vornado") and Vincent Curcio ("Defendant Curcio" or "Mr. Curcio") (collectively referred to as "Defendants") for discriminating against Mr. Thomas based on his race (East Asian / Chinese) by subjecting him to a hostile work environment and retaliating against him for complaining of the adverse discriminatory treatment. Defendants' conduct violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 to 14-151. Defendants also violated the Stored Communications Act ("SCA") by illegally accessing Plaintiff's electronic communications. 18 U.S.C §§ 2701-2712.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331, as it arises under Title VII and the SCA.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL as the federal claims arise from the same set of operative facts as the state and local claims, and form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to these claims occurred within this District.

**ADMINISTRATIVE PREREQUISITES**

5. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Opportunity in Employment Commission ("EEOC"). The EEOC issued a Right-to-Sue Letter dated January 26, 2016, relating to the discriminatory acts described in this Complaint. This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

**TRIAL BY JURY**

6. Plaintiff respectfully requests a trial before a jury.

**PARTIES**

7. Plaintiff Thomas Chung, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

8. Upon information and belief, Defendant Highgate was at all times relevant hereto a Limited Partnership organized under the laws of the State of Delaware, and headquartered in the State of Texas.

9. Upon information and belief, at all times relevant hereto, Defendant Vornado was and is a corporation organized under the laws of the State of Maryland with headquarters located in the State of New Jersey.

10. Upon information and belief, at all times relevant hereto, Defendant Curcio was and is an individual residing in Suffolk County in the state of New York.

## STATEMENT OF FACTS

11. Mr. Chung is an Asian-American man, of Chinese descent.

12. In and around April 2007, Mr. Chung began his employment at the Crowne Plaza Times Square Hotel ("Crowne Plaza") as a Maintenance Mechanic in the Engineering Department, earning $32.00 per hour.

13. Highgate operates the Crowne Plaza.

14. Mr. Chung is an employee of Highgate; he was hired by Highgate, receives his pay from Highgate, and interacts with Highgate's Human Resources ("HR") department.

15. In Mr. Chung's team of approximately twenty-five (25) individuals, Mr. Chung was the only East Asian or Chinese employee.

16. In and around 2011, Defendants hired Vincent Curcio as Director of Engineering; in this position Mr. Curcio is Mr. Chung's direct supervisor, possessing the authority to set Mr. Chung's schedule and job responsibilities, discipline him, and terminate him.

17. Mr. Curcio immediately displayed a discriminatory animus against Mr. Chung because of his race, treating him differently than non-Asian or non-Chinese employees.

18. Upon information and belief, Mr. Curcio is an employee of Vornado.

19. As a Vornado employee was Mr. Chung's direct supervisor, Vornado was Mr. Chung's joint employer.

20. Prior to Mr. Curcio's hiring, Mr. Chung earned several thousand dollars of overtime each year.

21. Mr. Curcio eliminated every opportunity for Mr. Chung to earn overtime pay by sending him home and allowing other less senior, non-Asian, non-Chinese employees to work overtime hours.

22. Mr. Chung, as a more senior Mechanic, was entitled to the opportunity to work overtime.

23. Since Mr. Curcio's hire, Mr. Chung has not been offered the opportunity to work overtime.

24. In and around October 2012, during and in the aftermath of Hurricane Sandy, Highgate accommodated its employees by allowing them to stay overnight in a room at the Crowne Plaza.

25. This accommodation allowed employees to avoid a hazardous commute, and be available for the significant overtime shifts that were necessary because of the hurricane.

26. Highgate refused to allow Mr. Chung to stay in a room at the Crowne Plaza during and after the hurricane.

27. Upon information and belief, no other maintenance mechanic was denied a room.

28. Mr. Chung was forced to commute from his home in Brooklyn through the safety hazards and service shutdowns caused by the hurricane for the rest of the week.

29. On or about the morning of October 31, 2012, Mr. Chung made it in to work despite major transpiration delays. He was met with Mr. Curcio sarcastically remarking, "You showed up freaking late, how the hell were you able to make it in today?"

30. On November 3, 2012, Mr. Chung arrived at work approximately one (1) hour late because of the compromised transportation system.

31. Mr. Chung texted Mr. Curcio to inform him of the circumstances, to which Mr. Curcio responded, "You can stay to make up the time."

32. However, around that time, Highgate had issued a memo informing employees scheduled to work at 8 a.m., including Mr. Chung, that all lateness for that week would be excused due to the weather.

33. Additionally, the employees that were allowed to stay at the hotel earned a significant amount of overtime, while Mr. Chung was excluded from the opportunity and forced to trek home.

34. Mr. Chung frequently complained to Mr. Curcio about his denial of overtime hours.

35. Mr. Curcio, in response to Mr. Chung's complaints, stated that Mr. Chung "did not need" the overtime.

36. Because no one else was denied overtime in this way, Mr. Chung interpreted this to mean that he did not need the overtime because of his race.

37. When complaining to his colleague, Kevin Gray, about being excluded from overtime Mr. Gray responded by stating: "It ain't my fault because that man was racially biased

and discriminated against you.  He was the one who cut out all your overtime and gave it all to me because *he said that you're a useless Chinese guy that don't deserve shit*."

38.	This discriminatory conduct by Defendants continued through 2013 and into 2014; Mr. Chung continued to complain about it to no avail.

39.	During this time, Defendants retaliated against Mr. Chung for raising these complaints by ostracizing him, creating rules that others did not have to follow, assigning him dangerous and undesirable job duties, issuing him specious and false write-ups, continuing to deny him overtime, and ridiculing him in front of staff.

40.	On or about April 16, 2014, Mr. Chung submitted a complaint to Highgate's Director of Human Resources ("HR"), Karen Sutera, regarding the racial discrimination and hostile work environment he was facing.

41.	Mr. Chung did not receive any follow up on his complaints.  In fact, the harassment grew worse.

42.	On or about May 9, 2014, Mr. Curcio accosted Mr. Chung at work.

43.	Mr. Curcio demanded that Mr. Chung surrender his personal cellphone to be searched.

44.	Mr. Chung initially refused this demand, but Mr. Curcio threatened him with termination if he did not comply.

45.	Upon information and belief, no other employee was forced to hand over their personal property to a supervisor.

46. Mr. Curcio and his assistant spent approximately an hour poring over Mr. Chung's personal phone, going through his call logs, voicemail, email, text messages, and photographs.

47. During this ordeal, Mr. Chung demanded to know why he was being treated this way, and explicitly asked whether this was motivated by his race.

48. Mr. Curcio indicated that he was searching his phone for a reason to terminate Mr. Chung.

49. After approximately an hour, Mr. Curcio, expressing frustration that there was nothing incriminating on the phone, returned it to Mr. Chung and sent him back to work.

50. In May 2014, Mr. Chung filed a complaint with the Equal Employment Opportunity Commission, detailing the race discrimination and retaliation at the Crowne Plaza.

51. In further retaliation, Defendants reassigned Mr. Chung to month after month of dangerous and demeaning work.

52. Shortly after Mr. Chung filed his EEOC charge, Defendants escalated their retaliation against him by assigned Mr. Chung to change ceiling tiles. This task involved Mr. Chung, every day, climbing alone into the often filthy ceiling change the tiles on a daily basis.

53. This task was not part of Mr. Chung's job responsibilities.

54. Upon information and belief, no other employee with Mr. Chung's position was forced to replace ceiling tiles for any extended period of time.

55. Mr. Chung should have received "combo" pay for performing ceiling tile work, as it was outside his job description; however, Defendants denied Mr. Chung combo pay as well.

56. Under Mr. Curcio's supervision Mr. Chung never received combo pay, while his non-Chinese coworkers regularly did.

57. On one occasion Mr. Chung entered Highgate's HR office to make a photocopy; upon seeing Mr. Chung there Mr. Curcio demanded he leave, then threatened him with termination if he ever returned to the HR office.

58. Mr. Curcio continued to try to force Mr. Chung to sign false write-ups and admissions.

59. Defendants berated Plaintiff, shouting at him and otherwise verbally abusing him.

60. Defendant Curcio left Vornado in and around August of 2015, however his subordinates who have taken over his position continue to discriminate and retaliate against Mr. Chung.

61. Defendants' discriminatory harassment continues to this day: Defendant Highgate and Vornado attempt to manufacture false pretexts for issuing Mr. Chung warnings, verbally abuse him, apply workplace rules differently to him, and otherwise create a hostile work environment based on race.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Hostile Work Environment Based on Race in Violation of Title VII**

62. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 61 with the same force as though separately alleged herein.

63. Title VII prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

8

64. Defendants discriminated against Plaintiff by denying him overtime, issuing specious discipline, subjecting him to offensive comments, forcing him to do unhealthy, physically taxing, undesirable work, and treating him less well than his non-Asian, non-Chinese coworkers.

65. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, lost overtime and bonus pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

66. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of Title VII

67. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 66 with the same force as though separately alleged herein.

68. Title VII prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

69. Plaintiff properly complained to Defendants about race-based discrimination

70. Plaintiff filed a charge alleging race discrimination and retaliation with the EEOC.

71. Defendants retaliated against Plaintiff for making these complaints by, *inter alia*, subjecting him to further offensive, racially motivated harassment, continuing to deny him overtime, and subjecting him to degrading and dangerous working conditions.

72. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including,

but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

73. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## THIRD CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

74. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

76. Defendants discriminated against Plaintiff by denying him overtime, issuing specious discipline, subjecting him to offensive comments, forcing him to do unhealthy, physically taxing, undesirable work, and treating him less well than his non-Asian, non-Chinese coworkers.

77. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

78. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

79. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 78 with the same force as though separately alleged herein.

80. NYCHRL prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within the NYCHRL.

81. Plaintiff properly complained to Defendants about race-based discrimination

82. Plaintiff filed a charge alleging race discrimination and retaliation with the EEOC.

83. Defendants retaliated against Plaintiff for making these complaints by, *inter alia*, subjecting him to further offensive, racially motivated harassment, continuing to deny him overtime, and subjecting him to degrading and dangerous working conditions.

84. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

85. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
### Violation of the Stored Communications Act

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. At all relevant times herein, the SCA was in full effect governing the access of stored electronic communications.

11

88. The SCA prohibits unauthorized access to an electronic communication while it is in electronic storage.

89. Defendants coerced Plaintiff into providing them access to Plaintiff's personal stored electronic communications through his cellular phone by threatening him with termination.

90. Under duress, Plaintiff provided Defendants with access to his stored electronic communications, including, but not limited to, text messages, voicemail and email.

91. Under the SCA, access is not properly authorized if the authorization is obtained by coercion.

92. Much of this information was not stored directly on Plaintiff's phone, but kept remotely with his data provider or in the "cloud."

93. Defendants' accessing and viewing of Plaintiff's personal stored electronic communications was in violation of the SCA.

94. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of statutory damages, punitive damages, and attorneys fees against Defendants, as well as whatever additional remedy the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $300,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $300,000;

C. For the third claim, actual damages to be determined at trial, but in no event less than $300,000;

D. For the fourth claim, actual damages to be determined at trial, but in no event less than $300,000;

E. For the fifth claim, damages to be determined at trial but in no event less than $25,000;

F. An award of compensatory, assumed, and punitive damages;

G. Pre-judgment and post-judgment interest;

H. Attorneys' fees and costs; and

I. For such other and further relief as the Court deems just and proper.

Dated:   New York, New York
April 25, 2016

THE HARMAN FIRM, LLP

By: _____
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*